## Seitzinger Estate

*James D. Williamson*, for accountant.

GANGLOFF, P. J., January 16, 1961.—Helen Louise Seitzinger died testate on April 7, 1960 . . .

Decedent in items second and third of her will gives $5,000 to her sister, Carrie Sassaman, which sum "is to be placed in trust in a bank to be designated by my

hereinafter named Executor subject to the condition that she shall receive during her natural life the income from the same and so much of the principal as she may require for emergencies, and subject to the further provision that the emergencies necessitating a withdrawal of the principal be approved by my hereinafter named and designated Executor." . . .

Her residuary estate is to go in equal shares to Carrie Sassaman; Albert J. Seitzinger and Mildred R. Seitzinger, his wife; Joyce Ann Seitzinger; and Mae Loy and John Loy, her husband . . .

The pecuniary legacies also are subject to deduction of the transfer inheritance tax paid thereon.

Under date May 26, 1960, Carrie Sassaman filed with the administrator a written instrument which reads: "This to to advise you that I do hereby renounce and disclaim the interest bequeathed to me by items 2d and 3rd of the last will and testament of the above named decedent (Helen Louise Seitzinger) and do hereby refuse to accept the interest, to wit, the income from $5,000.00 for my natural life, together with so much of the principal thereof as I may require for emergencies, bequeathed to me in the aforementioned items. The foregoing renunciation and disclaimer shall be without prejudice to any other right or interest which I may have under other items of the above mentioned Last Will and Testament."

Section 3(a) of the Estates Act of April 24, 1947, P. L. 100, as amended by the Act of February 17, 1956, P. L. 1073, provides: "Any power of appointment, or power of consumption, whether general or special, other than a power in trust which is imperative, and *any interest* in, to, or over real or *personal property* held or owned outright, or in trust, or *in any other manner* which is reserved or *given to* any person by deed, *will* or otherwise, and irrespective of any limitation of such power or interest by virtue of any restric-

tion in the nature of a so-called spendthrift trust provision, or similar provision, *may be released or disclaimed*, either with or without consideration, by written instrument signed by the person possessing the power or the interest and delivered as hereinafter provided . . ." (Italics supplied.) Section 3 (b) of the same act defines the form of release or disclaimer (authorizing either an absolute or conditional release or disclaimer) and section 3 (c) thereof specifies the method of delivery of notice of the release or disclaimer. Both the form of the present disclaimer and the notice to be given are in accordance with the provisions of the act.

The Estates Act, supra, clearly gives the life-tenant, Carrie Sassaman, the legal right to release or disclaim the life estate given to her by testatrix in her will. What is the legal effect of this action on the part of Carrie Sassaman? At least a partial answer to the question may be found in Bute Estate, 355 Pa. 170. In that case, a life-tenant filed a disclaimer of the life estate. In analyzing the legal effect of this disclaimer the appellate court first refers to Paul's Estate, 1 D. & C. 231, in which Judge Gest decided that notwithstanding the disclaimer the bequest was subject to the collateral inheritance tax which would have been payable by the legatee had he not renounced the gift. The appellate court refers to the decision of Judge Gest in part as follows (page 172) : "The basis for Judge Gest's decision was that title to the bequeathed property passed by the will eo instanti upon testatrix's death; that a renunciation presupposes that a legatee 'has something to renounce,' hence the renunciation acted, by analogy, to an assignment or transfer of the legatee's interest, and, as the tax was affixed when the legatee received title, the tax liability of the legatee, and lien, were not divested by the renunciation."

The appellate court said, page 173 : "We are in unanimous opposition to such reasoning and conclusion. If a

person is not compelled to accept a bequest or inheritance against his will, and is permitted to renounce it, it is legal sophistry to suppose that such a share first vests, then is divested, by assignment back to the estate, releasing in some undisclosed manner the personal liability of the renouncing distributee, but still retaining the tax liability upon the estate being distributed . . ."

The appellate court then states the rule to be (page 174) : "Where a beneficiary disclaims or renounces his interest under the will, it becomes inoperative as to him, and his renunciation is considered as relating back to the time of the testator's death, or the time when the will became effective, and the property will be dealt with *as if the gift had not been made* . . ." (Italics supplied.)

Testatrix could have but did not provide for a situation such as has developed here, namely, a disclaimer of the gift of a life estate. Where a testator fails to provide for a contingency which actually happens, or to cover circumstances which subsequently result, the court is without authority to rewrite the will so as to provide for a gift over: Berger Estate, 360 Pa. 366; Wainwright Estate, 376 Pa. 161; Benson Estate, 380 Pa. 213.

We have, therefore, a situation where the gift of a life estate in personalty has been renounced, whereupon, as stated in Bute Estate, supra, the property, namely $5,000, is to be dealt with as if the gift had not been made. It also has been noted that the will does not contain a specific disposition over where, as here, there is a renunciation of the gift. However, as already noted, decedent included a residuary estate disposition in her will.

The rules for interpretation of wills are set forth in section 14 of the Wills Act of April 24, 1947, P. L. 89. Under the provisions of subsection (8) of section 14, a devise or bequest to a child or other issue of testator

or to his brother or sister or to a child of his brother or sister shall not lapse if the beneficiary shall fail to survive testator and shall leave issue surviving testator but shall pass to such surviving issue. Obviously this is not the case in the present estate but is specifically referred to here because of what is provided in subsection (9) of section 14, supra, which provides: "A devise or bequest not being part of the residuary estate which shall fail or be void because the beneficiary fails to survive the testator or . . . is released or disclaimed by the beneficiary, if it shall not pass to the issue of the beneficiary under the provisions of clause (8) hereof, and if the disposition thereof shall not be otherwise expressly provided for by law, shall be included in the residuary devise or bequest, if any, contained in the will." In the present case, the bequest of the life estate fails because of the disclaimer but it does not pass under subsection (8) for the obvious reason that the beneficiary is living. Nor is the disposition of the gift "otherwise expressly provided for by law" (see comment under subsection 9). The end result is that the life estate fund passes to the residuary estate, if any. See also Gilliland v. Bredin, 63 Pa. 393; Stiles v. Easton National Bank, 33 Pa. Superior Ct. 57; Woods Estate, 25 Dist. R. 451.

It may be emphasized in this discussion that we are here dealing with a disclaimer and not a release. In Borsch Estate, 362 Pa. 581, cited by counsel for the accountant, the beneficiary had already accepted the gift "and enjoyed it for many years" (page 585) and what the beneficiary attempted to do in that case was to release an interest that had already vested in her. Moreover, there also was involved in that case the attempt to terminate an existing operating spendthrift trust (page 585). The present case does not involve a release, as already noted, nor does the will include a spendthrift trust provision.

It is to be observed that the applicable statutory provisions hereinabove referred to make no distinction between absolute bequests or bequests in trust for life of a beneficiary.

As already pointed out, Carrie Sassaman, the life-tenant beneficiary, also is a residuary estate beneficiary. As residuary estate beneficiary she presumably will take a larger part of the principal of decedent's estate than would have been the case had she not renounced her life estate. Of course, this latter statement must be read in conjunction with the power of consumption of principal given to the life-tenant. It is well settled that an heir expressly excluded by a will takes if an intestacy results: Verner Estate, 358 Pa. 280; Pantazis v. Fidelity and Deposit Company of Maryland, 369 Pa. 221. While there is no intestacy in the present case, nevertheless testatrix expressly includes her sister, Carrie Sassaman, as a residuary legatee; moreover, as already pointed out, testatrix made no disposition of the life estate fund other than to the life-tenant and over to the residuary estate legatees.

Counsel for the accountant also calls attention to what our Supreme Court said in Borsch Estate, supra, and repeated in Girard Will Case, 386 Pa. 548, at page 579: " 'One possessed of testamentary capacity, who makes a will in Pennsylvania, may die with the justifiable conviction that the courts will see to it that his dispositions, legally made, are not departed from by those charged with the duty of performance . . .' This always has been and unless changed or modified by the legislature, should continue to be the wise salutary policy of the Courts of Pennsylvania regarding wills." It has long been settled that a testator is presumed to know the statutory provisions relating to wills. He is presumed to know that the surviving spouse may elect to take against the will thereby frustrating his inten-

tions as expressed in the will. This is a statutory right given to a surviving spouse. By the same token he is presumed to know that a statutory right to disclaim a gift is given to a beneficiary coupled with the statutory provision that where there is a disclaimer such disclaimer, under the facts of the present case, amounts to a complete defeat of the gift disclaimed and the gift falls into the residuary estate. Now the testator readily could have overcome these statutory provisions by providing in his will for a disposition of the disclaimed gift to others than residuary estate beneficiaries. There is no such disposition in the present case. We are bound by the provisions of the applicable statutes and citations herein referred to and we therefore conclude that the $5,000 bequest hereinbefore identified falls into the residuary estate and all of the residuary estate beneficiaries, including Carrie Sassaman, are entitled to share therein as in the will provided . . .

And now, January 16, 1961, the account is confirmed absolutely and the administrator c. t. a. aforesaid is directed to distribute the balance on hand.