Kelsey Estate.

Argued April 24, 1958. Before BELL, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

514

*Irving N. Kieff,* guardian ad litem and trustee ad litem, appellant, in propria persona.

*Walter Y. Anthony,* with him *W. LeRoy McKinley,* for appellee.

OPINION BY MR. JUSTICE BELL, June 30, 1958:

The question involved is narrow : Can the inter vivos trustee invest in common stocks?

A. Warren Kelsey made a Deed of Trust on July 16, 1914 in which he assigned certain enumerated bonds, having an approximate value of $300,000, and $100,000 in cash to the Germantown Trust Company, Trustee, in trust for certain persons and purposes therein set forth.

Trustee filed a partial account, denominated Sixth Account, on November 30, 1955. The account showed an investment on October 25, 1955 in 20 shares of the common stock of Philadelphia Electric Company and the sale of those shares later on the same day, with a resultant loss of $34.58. The guardian ad litem and trustee ad litem demanded that the trustee be surcharged for this loss because the investment was unauthorized by the Deed of Trust. The Orphans' Court held by a majority of 3 to 2 that the restriction in the Deed of Trust was not an "express restriction" against investments which were authorized by statute. From the final decree the guardian and trustee ad litem took this appeal.

In *Gillingham Estate,* 353 Pa. 493, 46 A. 2d 269, the Court said (page 495) : "From the early history of the Commonwealth this Court has consistently held that in the absence of authority granted by the instrument creating the trust, or by the legislature, fiduciaries are

not permitted to invest the trust funds in stocks or bonds of private corporations: [citing cases]."

The Legislature authorized trustees and other fiduciaries to invest in preferred stocks in and by the Act of May 29, 1949, P. L. 1828, §9, 20 PS §821.9, and to invest in common stocks in and by the Act of August 24, 1951, P. L. 1410, and the Act of June 19, 1953, P. L. 284, 20 PS §821.9, each of which amended the "Fiduciaries Investment Act of 1949", supra. Section 9 of the amendments of 1951 and 1953 authorized a trustee (or other fiduciary)—unless restricted by the testator or settlor (Section 18 infra)—to invest in common stocks which met certain specified qualifications or standards. The stock of the Philadelphia Electric Company met the tests and qualifications required by the said Acts and was a legal investment within the purview of said Acts.

The trustee's powers of investment were contained in the Eighth paragraph of Kelsey's Deed of Trust, which, after authorizing the sale and conveyance of personalty and real estate, provided with respect to the proceeds thereof as follows: "Upon any such sales being made, the Trustee is hereby authorized . . . to invest . . . the proceeds in bonds, mortgages and such other securities as to it shall seem proper . . . but except to this extent, the power of investment of said Trustee *shall not in any event** include the right to invest in stocks; And Provided However, that said Trustee shall not invest in any steam or electric railroad or traction bonds, or bonds of the cities of New York or Boston, but nothing in this Deed shall be considered to prohibit said Trustee from investing in the bonds of water companies or coal companies: And Provided Further, that the said Trustee shall invest the cash transferred to it by

---

* Italics throughout, ours.

this Deed of Trust in first mortgages on improved real estate in the State of Pennsylvania, and as far as possible shall keep approximately Twenty-five per cent (25%) of the principal of the said trust estate invested in such mortgages."

Section 18 of the Fiduciaries Investment Act of 1949, 20 PS §821.18, provides: "The testator or settlor in the instrument establishing a trust may prescribe the powers, duties and liabilities of the fiduciary regarding the investment or noninvestment of principal and income and the acquisition, by purchase or otherwise, retention, and disposition, by sale or otherwise, of any property which, at any time or by reason of any circumstances, shall come into his control; *and whenever any such provision shall conflict with this act, such provision shall control notwithstanding this act.* In the absence, however, of an *express restriction to the contrary* in the trust instrument, the fiduciary may invest in any investment authorized by this act."

We approach the solution of this problem in the light of a host of authorities which proclaim:

"No rule regarding wills is more settled than the great General Rule that the testator's intent, if it is not unlawful, must prevail! This is the reason why so many cases continually proclaim that the pole star in the construction of every will is the testator's intent. Moreover, 'The testator's intention must be ascertained from the language and scheme of his will: "it is not what the Court thinks he might or would have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words": Britt Estate, 369 Pa. [450, 454, 87 A. 2d 243]': Sowers Estate, 383 Pa. 566, 119 A. 2d 60.": *Cannistra Estate,* 384 Pa. 605, 607, 121 A. 2d 157.

There are no appellate court decisions construing §18 of the Fiduciaries Investment Act. The lower court

in its majority opinion held that the trustee could invest in common stocks because the deed did not contain "any express restriction to the contrary". Section 18 must be given a reasonable construction, considering the entire section of the Act in the light of the principles of law hereinabove set forth.

We shall assume, without deciding, that the Legislature could enact that a testator's or settlor's powers of investment may be validly and constitutionally restricted or changed or abolished, with respect to wills and trusts *theretofore existing,* and shall decide this case on the broad issue upon which it was considered by the lower court and presented in this Court.

Settlor clearly, unambiguously and unequivocally prohibited the trustee from investing in stocks, or in any steam or electric railroad or traction bonds, or in bonds of the cities of New York or Boston; and directed that the cash transferred to the trustee shall be invested in first mortgages on improved real estate in Pennsylvania. Settlor's language limiting and restricting the trustee's powers of investment is, we repeat, clear, unambiguous, unequivocal, mandatory and imperative. The words "shall not *in any event* include the right to invest in stocks" could not be clearer or more inclusive. It would be unreasonable and absurd to hold that settlor, in order to prohibit the purchase of stocks, must use the same identical (restrictive) language which the Legislature used 35 years later.

It has been argued that the settlor's language should be disregarded because the income beneficiaries are the primary objects of a settlor's bounty. However, this rule appertains only as between the life tenants and remaindermen,* not as between a testator or set-

---

* Cf. §9(a)(1) of Fiduciaries Investment Act of 1949 as to standard of care with respect to "probable income . . . as well as the probable safety of their capital."

tlor and his beneficiaries, and is inapposite. More analogous and more apposite is the principle which has often been iterated by this Court in connection with trusts, especially spendthrift trusts where the beneficiaries seek a modification or a termination thereof.

In *Cannistra Estate,* 384 Pa., supra, the Court said (pages 609-610) : "In Bosler Estate, 378 Pa., supra, the Court refused to terminate a testamentary (spendthrift) trust although the fund had been so depleted that the income therefrom was not adequate to support the petitioner, who was the life tenant with power of appointment in default of issue, and it was averred he was incapable of having issue. . . . '. . . The principle upon which the cases rest is the protection of the settlor irrespective of the welfare or interests of the beneficiary. It was said in Morgan's Estate (No. 1), 223 Pa. 228, 230, 231, 72 A. 498, 499 : "It is always to be remembered that consideration for the beneficiary does not even in the remotest way enter into the policy of the law; it has regard solely to the rights of the donor. . . . the law's only concern is to give effect to the will of the donor as he has expressed it." ' "

A testator or settlor may " 'condition his bounty as suits himself, so long as he violates no law in so doing. When a trust of this kind has been created, the law holds that the donor has an individual right of property in the execution of the trust; and to deprive him of it would be a fraud on his generosity.' . . . 'cujus est dare, ejus est disponere' " : *Borsch Estate,* 362 Pa. 581, 587, 588, 67 A. 2d 119. This principle has been firmly imbedded in our law for over 100 years : *Holdship v. Patterson,* 7 Watts 547; *Heyl Estate,* 352 Pa. 407, 43 A. 2d 130; *Riverside Trust Co. v. Twitchell,* 342 Pa. 558, 20 A. 2d 768; *Harrison's Estate,* 322 Pa. 532, 185 A. 766; *Morgan's Estate,* 223 Pa. 228, 72 A. 498. See also *Grote Estate,* 390 Pa. 261, 135 A. 2d 383.

Courts cannot, even when aided by hindsight and the ingenuity of counsel, rewrite a settlor's deed or a testator's will, or distort or torture his language or the language of a statute relating thereto, in order to attain what we believe is beneficial and wise, or even what we believe settlor would or should have provided if he had possessed a knowledge of all presently existing circumstances.

Decree reversed. Costs shall be equally divided between principal and income.