## Middleton Estate (No. 3)

*Ross & Smith*, for accountant.

*Harriet M. Mims*, guardian and trustee ad litem.

SATTERTHWAITE, J., December 24, 1959.—In 1955 this court decided that the trustee of the within estate was not precluded by any express restriction to the contrary in decedent's will and was therefore authorized to invest in corporate stock as permitted by the Fiduciaries Investment Act of May 26, 1949, P. L. 1828, as amended, 20 PS §821.1, et seq.: Middleton Estate (No. 2), 8 D. & C. 2d 133. No appeal was taken from the decision. In 1958 the Supreme Court decided three cases involving the same general subject matter: Kelsey Estate, 393 Pa. 513; Jeffries Estate, 393 Pa. 523; Saunders Estate, 393 Pa. 527. The with-

in trustee, believing it possible that the latter decisions might have affected the basis for our earlier ruling, has again brought the investment clause of decedent's will before us for reconsideration in light thereof.

The question again is presented by a guardian and trustee ad litem, appointed for the purpose, who has filed exceptions to a new partial account setting forth nominal losses on transactions in two selected items of the investment portfolio. One was a loss of $80.99 on the sale of five shares of Radio Corporation of America first preferred stock which had been purchased in 1955 after our decision in that year and sold in 1959 subsequent to the above mentioned decisions of the Supreme Court. The other was a loss of $17.93 arising from the purchase and immediate resale on March 30, 1959, of five shares of E. I. DuPoint deNemours & Co. common stock. Just as in the earlier proceedings, counsel for the trustee and the guardian and trustee ad litem have stipulated all the requisite facts, so that the only question presented is the propriety of these investments under possibly new interpretations of the law which may be dictated by the Supreme Court pronouncements in the cited cases.

No useful purpose will be served by repeating all the background facts, detailed provisions of decedent's will, review and analysis of the earlier authorities and full quotation of the statutory language. These matters are set forth at length in our former opinion, which we have carefully reconsidered and now reaffirm. For present purposes, it will suffice to note that decedent died in 1888 leaving a will which created trusts which still subsist, and which provided with respect to investments, in part, as follows:

"And further in Trust within the space of two years from the time of my death to convert into cash such of my estate as shall not consist of such securities as are hereinafter mentioned and to invest the money so

realized at their discretion in the following securities, viz. . . . [enumerating bonds of the State of Pennsylvania and of the United States, and bonds and mortgages secured on geographically limited real estate in central Philadelphia and subject to additional restrictions thereon] . . . In case any investment of my estate shall be paid off then my said Trustees shall reinvest in such securities as I have named."

The controlling statutory provision is section 18 of the Fiduciaries Investment Act of May 26, 1949, P. L. 1828, 20 PS §821.18, which recognizes the right of a testator or settlor to prescribe investment standards, and accords priority thereto over the provisions of the act if there be a conflict. The section closes with this final sentence:

"In the absence, however, of an express restriction to the contrary in the trust instrument, the fiduciary may invest in any investment authorized by this act."

We believe that neither Kelsey Estate nor Jeffries Estate, supra, in applying this legislative language to the particular phraseologies of the respective trust instruments there involved, is presently controlling. In both, the trustees were authorized in general to make investments without being confined to "legals", but were expressly denied the right to invest in corporate stocks, in so many words of settlor or testator. They are in point, and, when the occasion is presented, will require reëxamination of earlier lower court decisions, in that class of cases referred to in our earlier opinion (8 D. & C. 2d, at 137) which held that particular restrictive provisions should be construed to apply only to the settlor-given power to invest in "nonlegals," and not to affect the law-given power to avail of all "legals." But the within trust provisions do not pose this question.

Saunders Estate, supra, however, involved trust language which might at first glance seem to be more

closely analagous to that appearing in the instant case. There, after authorizing retention of investments which she had made in her lifetime, whether "legal" or not, testatrix further provided:

"I *direct* that my Executor and Trustee *shall* have power to invest and reinvest in Government Bonds *only* or Bonds guaranteed by the Government." (Italics supplied.)

The Supreme Court held that the expressed intent of testatrix must be given effect and that therefore this language was likewise a mandatory restriction which prohibited any investments other than those specified. Emphasis was laid on the unequivocal use by testatrix of such imperative words as "direct", "shall" and "only", and it was held that in view thereof it was of no controlling significance, notwithstanding section 18 of the Fiduciaries Investment Act, that testatrix had not also spelled out an express prohibition against general "legal" investments in the phraseology of the subsequent statute.

The only reported cases in the lower courts on the broad question since Saunders Estate have uniformly held, after giving due regard to that decision and its companions in the Supreme Court, that particular language in the respective trust instruments under consideration therein, did not amount to express restrictions precluding investment in other "legals." Two of these are of no present moment. They are Earle Estate, 16 D. & C. 2d 643, and Henderson Estate, 19 D. & C. 2d 411; both involved bare permissive enumerations of particular types of authorized investments, with neither an express prohibition against others, nor an imperative and mandatory direction to avail of those specified to the necessary exclusion of others.

Foulke Estate, 18 D. & C. 2d 773, and Betts Trust, 9 Fiduc. Rep. 647, involved testamentary provisions

more closely related to those presented in the instant case. In the Foulke case testator left his residuary estate to the trustee "in trust that said Company will hold and invest the same, in good Real Estate security and pay the net income or interest thereof . . ." The court, sustaining exceptions to the adjudication of the auditing judge who had ruled to the contrary, distinguished Saunders Estate on the ground that the within testator did not use the words "direct" or "only", and that his use of the word "will", while arguable to be imperative, may equally be considered "merely the employment of the future tense, investment being made of course only after the testament became operative, just as in the use of the word 'will' in the phrase 'will hold'." Accordingly, it was held that the quoted clause of the will was merely a suggestion of testator, stating a preference for real estate security; it did not prohibit anything, and hence was not an "express restriction" under section 18 of the Fiduciaries Investment Act.

In the Betts case, testator in providing for the investments of the trust directed that the trustee "shall put and place the same out at interest in mortgages and ground rents, and pay over the interest thereon . . ." Judge Lefever, without further discussion or elaboration so far as the reported portion of the opinion discloses, held that the Foulke decision three days earlier was squarely in point and controlling.

We are in accord with these decisions and believe that Saunders Estate does not require modification of our former ruling herein. As in Foulke Estate, supra, the within testator did not use the words "direct" or "only" in connection with the specified investments, and his use of the word "shall" may be considered merely as indicative of his contemplation of future events. Moreover, even if the within testamentary language be considered as a *direction*, it would still

not be an *express* restriction against other "legals" as contemplated by the 1949 legislation. We do not understand Saunders Estate to overrule or necessarily to be inconsistent with the rationale of our earlier decision in this estate. We then held, and now reiterate, that the legislature, in its phrasing of section 18 of the Fiduciaries Investment Act of 1949, in fact intended as a matter of policy to permit general availability of "legals" notwithstanding possible inferences to the contrary in the trust instrument, unless settlor *expressly* provided otherwise. The comment of the Joint State Government Commission, which had drafted the act at the prior direction of the legislature, relative to section 18 includes the following:

"The last sentence is intended to make it possible for the fiduciary to invest in investments authorized by this act, even though the trust instrument indicates that other investments *shall* be made." (Italics supplied.)

All that Saunders Estate decided was that in order to constitute an "express restriction to the contrary" it was not necessary for a settlor to use that identical legislative language, and that the mandatory and imperative expression of intention by testatrix in that case, coupled with her explicit use of the word "only", complied with the statute and precluded investments other than those so exclusively mandated. We are not convinced that the Supreme Court would have reached this result had the word "only" not been included in the language of the trust instrument. No such exclusionary word or phrase appears in the instant case.

For the same reasons as set forth in our disposition of the earlier similar proceedings herein, we again believe that this litigation was instituted for the sole benefit of the income beneficiaries, and that therefore no part of the costs should be borne by principal.

## Order

And now, December 24, 1959, for the reasons set forth in the foregoing opinion, the exceptions of Harriet M. Mims, guardian and trustee ad litem, to the third partial account of The First Pennsylvania Banking and Trust Company, trustee under the will of Charles W. Middleton, deceased, are hereby dismissed.

It is further ordered that the sum of $250 be paid by said trustee to said Harriet M. Mims, guardian and trustee ad litem, as compensation for her services herein, said payment together with all other costs and expenses incident to said accounting to be paid or recouped out of income of said trust.